FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 20, 2017

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAY HYMAS, d/b/a DOSMAN FARMS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF INTERIOR; RYAN ZINKE, Secretary of United States Department of Interior; JAMES W. KURTH, Acting Director of the United States Fish and Wildlife Service; & DOES I-X,<br><br>Defendants. | No.    4:16-CV-5091-SMJ<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL DISMISSAL AND DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER** |

## I.    INTRODUCTION

Plaintiff Jay Hymas is a farmer who resides near the Umatilla and McNary National Wildlife Refuges. The United States Fish and Wildlife Services (FWS) permits farming on certain lands within the refuges through cooperative farming agreements (CFAs) and other contracts. Hymas objects to FWS's practice and method of awarding CFAs and other farming contracts on the refuges. In his operative amended complaint, Hymas alleges that FWS's actions relating to CFAs and farming contracts on the refuges between 2012 and the present: (1) violate the

Competition in Contracting Act (CICA); (2) violate of the Federal Grant and Cooperative Agreement Act (FGCAA); and (3) are arbitrary, capricious, an abuse of discretion, or contrary to law. ECF No. 86 at 16–19. Hymas also alleges that FWS has failed to fund trust accounts for counties bordering wildlife refuges, in violation of the Refuge Revenue Sharing Act, and that the Department of the Interior failed to properly respond to Hymas's Freedom of Information Act (FOIA) requests. ECF No. 86 at 19–20, 22–23. Hymas further alleges that his claims are brought on behalf of a class of similarly situated individuals. ECF No. 86 at 20–22.

Defendants (collectively "the government") move to dismiss each of Hymas's claims, except for his claim that the FWS's award of CFAs was arbitrary, capricious, an abuse of discretion, or contrary to law. ECF No. 89. The government argues with respect to each of these claims that this Court either lacks jurisdiction or Hymas has failed to state a claim. As explained below, each of Hymas's claims addressed in the governments' motion fails either on jurisdictional grounds or for failure to state a claim upon which relief may be granted. Accordingly, the government's motion for partial dismissal is granted.

Hymas moves for a temporary restraining order (TRO) immediately enjoining operation of existing CFAs and contracts and enjoining FWS from entering additional CFAs and contracts. ECF No. 94. The Court finds that the relief

Hymas requests would not preserve the status quo and, in any case, he fails to show a likelihood of irreparable harm. Accordingly, Hymas's motion for a TRO is denied.

## II.    BACKGROUND

**A.    Factual Background**

Hymas is a farmer residing in Washington near the Mid-Columbia Wildlife Refuge Complex, which includes the McNary and Umatilla National Wildlife Refuges. ECF No. 86 at 4. Portions of the McNary and Umatilla Refuges are farmed for the purpose of providing food and habitat for migratory waterfowl. ECF No. 86 at 6. FWS's Cropland Management Plans for the refuges identify three "Production Methods" for farming: (1) "Force Account Farming" conducted by refuge staff; (2) "Contract Farming" under which the refuge hires farmers to produce desired crops; and (3) "Cooperative Agreement Farming" under which private farmers produce specified crops and are permitted to harvest and sell a portion of the crop. ECF No 86 at 7.

In June 2012, Hymas contacted FWS and expressed his interest in farming certain fields on refuge land. ECF No. 86 at 10–11. Refuge manager Lamont Glass informed Hymas that the fields in question would be put out for competitive public bid, and that notice would be provided pursuant to FWS policy. ECF No. 86 at 11. Over the next ten months, Hymas made numerous inquiries to Glass and to FWS's regional office regarding when bidding would occur for the fields in question. ECF

No. 86 at 11–12. In March 2013, Glass informed Hymas that FWS decided against farming one of the fields, and that another field would be farmed under a CFA by a former cooperator. ECF No. 86 at 12.

Hymas stated at a March 29, 2013, meeting and in a subsequent email that he wanted to be considered for all eight farming contracts to be awarded in the McNary and Umatilla refuges. ECF No. 86 at 12. Hymas alleges that he received a letter on April 12, 2013, stating that he would not be permitted to compete for any of the open farming contracts. ECF No. 86 at 13.

On April 25, 2013, Hymas filed a bid protest in the United States Court of Federal Claims (Claims Court) regarding the 2013 CFAs on the McNary and Umatilla refuges. *Hymas v. United States*, 117 Fed. Cl. 466, 470 (2017). In July 2013, the Claims Court stayed the case to permit FWS to consider Hymas's interests in the 2014 bid selection process. *Id.*

On November 18, 2013, FWS sent a letter to incumbent cooperators asking whether they were interested in continuing their participation in the CFA program for 2014. ECF No. 86 at 14. On November 21, 2013, FWS issued a memo explaining the cooperative farming selection process and adopting a "priority system" for selecting cooperators. ECF No. 86 at 14.

On November 26, 2013, Hymas received an email from Glass asking Hymas to indicate by December 4, 2013, whether he was interested in participating in the

ORDER - 4

McNary and Umatilla Refuge CFA Program. ECF No. 86 at 15. On December 4, 2013, Hymas indicated that he was interested in the program and provided the requested information. ECF No. 86 at 15. In January 2014, FWS selected incumbent farmers for the CFA program. ECF No. 86 at 15. Hymas was not selected. ECF No. 86 at 15.

**B.    Procedural History**

On January 24, 2014, after Hymas was notified that he had not been selected to participate in the program for the 2014 year, the Claims Court lifted the stay. *Hymas*, 117 Fed. Cl. at 470. Hymas filed an amended complaint on February 5, 2014, alleging that FWS's process of awarding CFAs in the McNary and Umatilla Refuges was arbitrary and capricious and violated the Competition in Contracting Act (CICA) and the Federal Grant and Cooperative Agreement Act (FGCCA). ECF No. 60-34.

In July 2014, the Claims Court issued an order on the government's motion to dismiss and the parties' cross-motions for summary judgment. *Hymas,* 117 Fed. Cl. at 470. The government argued that the Claims Court lacked subject matter jurisdiction under the Tucker Act to review FWS's use of CFAs because the agreements are not procurements. *Id.* at 483–84. The government further argued that Hymas's challenges to four 2013 CFAs were moot because the agreements expired in March 2014. *Id.* at 485. The Claims Court concluded that it had

jurisdiction over Hymas's claims, concluding that the CFAs were "procurements." *Id.* at 486–88 (citing 41 U.S.C. § 111). The Claims Court also rejected the Government's mootness argument, concluding that FWS's agreement to consider Hymas as a farmer-cooperator for the 2014 cycle—resulting in a stay of proceedings in the case—did not moot his challenge to the 2013 CFAs. *Id.* at 489.

On the merits, the Claims Court held that (1) the CFAs at issue were procurements subject to the requirements of the CICA and FWS's priority selection system for the McNary and Umatilla refuges violated the CICA because the process did not provide for "full and open competition," *Id.* at 496–500; (2) FWS's priority selection system violated the FGCAA because FWS was required to use a procurement contract complying with the CICA to procure services, *Id.* at 500–01; (3) FWS's failure to comply with its own Departmental Manual, which mandated competition and objective review in awarding CFAs, was arbitrary and capricious, *Id.* at 501–04; and (4) FWS's post-hoc reliance on the Refuge Manual, which was not in effect during the 2013 and 2014 selection process, was arbitrary and capricious and lacked a rational basis, *Id.* at 504–06.

The Claims Court enjoined FWS from entering into any CFAs concerning the McNary and Umatilla National Wildlife Refuges for the 2015 farming season or thereafter until the selection process and award complied with the CICA and

1    FGCAA. *Id.* at 508. The court further directed FWS to terminate the 2014 CFAs at

2    issue. *Id.* at 509.

3        On appeal, the Court of Appeals for the Federal Circuit held that the CFAs at

4    issue were not procurements and therefore the Claims Court lacked jurisdiction to

5    review FWS's use of the agreements. *Hymas v. United States*, 810 F.3d 1312, 1328–

6    30 (Fed. Cir. 2016). To reach this conclusion, the court first considered whether

7    FWS had statutory authority to use CFAs because if it did not, it "could only have

8    negotiated procurement contracts subject to Tucker Act review." *Id.* at 1317. The

9    court held that the 1958 Act to Promote the Conservation of Wild Life, Fish, and

10   Game and the 1998 Fish and Wildlife Act, as amended in 2004, independently

11   permit FWS to negotiate CFAs. *Id.* at 1318–1324. The court vacated and remanded

12   with instructions to dissolve the permanent injunction and dismiss the case. *Id.* at

13   1330.

14       On remand the Claims Court transferred the case to this district. ECF No. 60-

15   76. The government moved to dismiss the case, arguing the Claims Court's transfer

16   order was inconsistent with the Federal Circuit's mandate to dismiss the case and

17   that Hymas's challenge to the 2013 and 2014 CFAs was moot. ECF No. 73 at 3–4.

18   This Court held that it lacked jurisdiction to review the Claims Court's decision to

19   transfer the case and that Hymas's claims were not moot. ECF No. 80 at 6.

20

ORDER - 7

1    With the Court's leave, Hymas filed an amended complaint on December 14,

2    2016, alleging that FWS's use of CFAs in the McNary and Umatilla Wildlife

3    Refuges from 2013 through the present violates the CICA; that FWS's selection of

4    participants was arbitrary, capricious, an abuse of discretion, or contrary to law; that

5    FWS's 2015 farming contracts violate procurement law; that FWS failed to fund

6    trust accounts for counties in violation of the Refuge Revenue Sharing Act; that

7    these claims are brought on behalf of a class; and that the Department of Interior

8    failed to properly respond to FOIA requests. ECF No. 86 at 16–22.

### III.    DISCUSSION

**A.    The Government's Motion to Dismiss**

11    The government moves pursuant to Rules 12(b)(1) and 12(b)(6) to dismiss

12    each of Hymas's claims, except for his claim that FWS's actions are arbitrary and

13    capricious. ECF No. 89.

**1. Legal standard**

15    A claim may be dismissed pursuant to Rule 12(b)(6) either for lack of a

16    cognizable legal theory or failure to allege sufficient facts to support a cognizable

17    legal theory. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015). "To survive a motion

18    to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

19    'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

20    678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim

is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must "'accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.'" *Taylor*, 780 F.3d at 935 (quoting *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Rule 12(b)(1) permits a party to respond to a pleading with a motion to dismiss for lack of subject matter jurisdiction. As with a Rule 12(b)(6) motion to dismiss, the Court must "accept all allegations of fact in the complaint as true and construe them in the light most favorable to the plaintiffs." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). However, a jurisdictional challenge may be made on the basis of extrinsic evidence. *Id.*

### 2. The Federal Circuit's decision conclusively resolved Hymas's CICA and FGCAA claims, and those claims must be dismissed.

The government argues that under the "rule of mandate doctrine" this Court is bound by the Federal Circuit's decision that the CFAs at issue are not subject to

the CICA and complied with the FGCAA. ECF No. 89 at 3–4. The rule of mandate

provides:

> When a case has been once decided . . . on appeal, and remanded to
> the [district court], whatever was before [the appeals court], and
> disposed of by its decree, is considered as finally settled. The [district
> court] is bound by the decree as the law of the case, and must carry it
> into execution according to the mandate. That court cannot vary it, or
> examine it for any other purpose than execution; or give any other or
> further relief; or review it, even for apparent error, upon any matter
> decided on appeal; or intermeddle with it, further than to settle so much
> as has been remanded . . . But the [district court] may consider and
> decide any matters left open by the mandate . . . .

*United States v. Thrasher*, 483 F.3d 977, 981 (9th Cir. 2007) (quoting *In re Sanford*

*Fork & Tool Co.*, 160 U.S. 247, 255–56 (1895)) (alterations in original). The

doctrine is jurisdictional. *Id.* at 982.

The rule of mandate doctrine is inapt here. The Federal Circuit's mandate

vacated the Claims Court's decision on jurisdictional grounds. *Hymas*, 810 F.3d at

1330. The doctrine therefore prohibits this Court from reconsidering only whether

the Claims Court had jurisdiction over this case, a question over which this Court

already lacks jurisdiction for other reasons, ECF No. 80 at 3–4.

Nevertheless, the non-jurisdictional law of the case doctrine applies in this

case.

> The law of the case doctrine states that the decision of an appellate
> court on a legal issue must be followed in all subsequent proceedings
> in the same case. The doctrine is a judicial invention designed to aid in
> the efficient operation of court affairs. Under the doctrine, a court is
> generally precluded from reconsidering an issue previously decided by

> the same court, or a higher court in the identical case. For the doctrine to apply, the issue in question must have been decided explicitly or by necessary implication in the previous disposition.

*Thrasher*, 483 F.3d at 981 (quoting *Herrington v. Cnty. of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993)). The law of the case continues to apply when a case is transferred. *See Christianson v. Cold Indus. Operating Corp.*, 486 U.S. 800, 816 (1988). The rule must, however, give way where a decision of the transferor court is in conflict with settled law in the circuit of the transferee court. *Morre v. Valder*, 65 F.3d 189, 195 n. 9 (D.C. Cir. 1995) (noting that the doctrine of stare decisis prevails over the law of the case when a conflict between the doctrines occurs). Accordingly, this Court will not reconsider legal issues conclusively decided in this case by the Federal Circuit so long as the Federal Circuit's decision does not conflict with settled Ninth Circuit case law.

> i.   *The CICA does not apply to the CFAs at issue.*

The Federal Circuit held that FWS properly interpreted its statutory authority as permitting it to negotiate and enter into CFAs. *Id.* at 1322–24. Indeed the court noted that 16 U.S.C. § 742f "unambiguously permits [FWS] to 'negotiate and enter into a cooperative agreement' like the CFA with a 'person' to implement a 'program' that (1) 'promotes the stewardship of resources of the refuges through habitat maintenance, restoration, and improvement'; or (2) 'supports the operation and maintenance of the refuge through constructing, operating, maintaining, or

improving the facilities of the refuges.'" *Id.* at 1323 (quoting 16 U.S.C. § 742f(d)(2)(A), (B)(i)–(ii)) (alterations omitted). The court further held that "the Claims Court erred in holding the competitive bidding requirements of the CICA apply to the 'cooperative agreements' authorized by regulation pursuant to the 1946 and 1958 [Wildlife] Acts." *Id.* at 1320. No apparent Ninth Circuit precedent contradicts these holdings. Accordingly, because the Federal Circuit's decision establishes that the CICA does not apply to the CFAs at issue here, Hymas's CICA claim must be dismissed.

> ii.    *FWS properly construed the CFAs as "cooperative agreements" under the FGCAA.*

The Federal Circuit held that FWS properly construed the CFAs as cooperative agreements—rather than procurements—under the FGCAA. *Id.* at 1327. As the court explained:

> Under the FGCAA, whether an instrument reflects a "procurement contract" or a "cooperative agreement" turns upon the principal purpose of the relationship. If [FWS] principally intended to "transfer a thing of value" to the private farmers "to carry out a public purpose of support or stimulation authorized by a law of the United States instead of acquiring (by purchase, lease, or barter) property or services for the direct benefit of or use of the United States Government," then the instrument is a cooperative agreement. [FWS] must also remain "substantial[ly] involve[d]" in the activity.

*Id.* (quoting 31 U.S.C. § 6305(1)). The court concluded that the CFAs meet that definition because the purpose of the CFAs is "to transfer a thing of value (i.e., the right to farm specific refuge lands and retain a share of the crop yield) to carry out

a public purpose authorized by law (i.e. to conserve wildlife on the refuges)," and that FWS "remains substantially involved in the activity." *Id.* at 1327–28. The court further noted that "[t]he CFAs cannot be construed as procurement contracts because the agency did not intend to acquire farming 'services' for the 'direct benefit or use of the United States Government.'" *Id* at 1328. No apparent Ninth Circuit precedent contradicts or undermines the Federal Circuit's interpretation of the FGCAA here.

Hymas alleges that FWS's use of "cooperative agreements" in this case violates the FGCAA. ECF No. 86 at 18. This claim is premised on an assertion the FGCAA required FWS to use procurement contracts to accomplish the intended purposes of the CFAs. *Id.* at 18–19. In other words, whether the CFAs violated the FGCAA turns on whether the CFAs can properly be treated as cooperative agreements under the FGCAA's provisions outlining when an agency must use procurement contracts and cooperative agreements. *See Hymas*, 117 Fed. Cl. at 500 ("[W]hether [FWS] violated the FGCAA turns on whether the [FWS]'s cooperative farming agreements procure property or services for the "direct benefit or use" of the Government."). Because the Federal Circuit has conclusively resolved this question in the government's favor, Hymas's FGCAA claim must be dismissed.

1

**3.  This Court lacks jurisdiction to consider Hymas's bid protest claims.**

2

Hymas alleges in Count IV of his amended complaint that FWS's 2015

3

farming contracts (not CFAs) for the McNary and Umatilla refuges violated

4

procurement law and Hymas "appeals" the Government Accountability Office's

5

(GAO) decision on his protest of the contracts. ECF No. 86 at 18–19.

6

The United States Court of Federal Claims has exclusive jurisdiction to

7

review bid protests, *Distrib. Sols., Inc. v. United* States, 539 F.3d 1340, 1344 (Fed.

8

Cir. 2008); *see also Fire-Trol Holdings, LLC v. United States Forest Serv.*, 209 F.

9

App'x 625, 627 (9th Cir. 2006) (noting that the Alternative Dispute Resolution Act

10

removed district courts' jurisdiction to hear bid protest cases); *Red River Holdings,*

11

*LLC v. United States*, 87 Fed. Cl. 768, 794 (Fed. Cl. 2009) ("Under ADRA, district

12

court jurisdiction provided by 28 U.S.C. § 1491(b)(1) terminated on December 31,

13

2000, leaving the Court of Federal Claims as the exclusive forum for bid protests.").

14

Accordingly, Hymas's "appeal" of the GAO decision on his bid protest is

15

dismissed.

16

**4.  Hymas fails to state a claim for violation of the Refuge Revenue Sharing Act.**

17

18

Hymas alleges in Count V of his amended complaint that Department of

19

Interior failed to fund trust accounts for counties bordering wildlife refuges in

20

violation of 16 U.S.C. § 715s. ECF No. 86 at 19–20. The Refuge Revenue Sharing

Act, 16 U.S.C. § 715s, mandates payment of a share of revenues generated by the

National Wildlife Refuges to counties in which those refuges are located. In his amended complaint Hymas quotes sections of the Act and alleges that he "believes this law is currently being violated by the vast majority of all FWS refuges." ECF No. 86 at 19. Hymas fails to plead any facts supporting this belief. Accordingly, Hymas falls well short of pleading factual matter sufficient to state a plausible Refuge Revenue Sharing Act claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This claim is dismissed.

### 5. Class action claims

Count VI alleges class action claims based upon Hymas's CICA Act, FGCAA, APA, and Refuge Revenue Sharing Act claims. ECF No. 86 at 20–22. As discussed above, each of these claims except for the APA claim, as articulated in Count III of the amended complaint, must be dismissed. Hymas's alleged CICA, FGCAA, and Refuge Revenue Sharing Act class-action claims fail for the same reasons.

With respect to Hymas's claim under the APA, this claim cannot proceed as a class action because Hymas, as a pro se litigant, cannot represent the class either as class counsel or as a representative party. *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664–65 (9th Cir. 2008) ("It is well established that the privilege to represent oneself pro se provided by [28 U.S.C.] § 1654 is personal to the litigant and does not extend to other parties or entities."); *Fymbo v. State Farm Fire and*

ORDER - 15

*Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) (holding that a pro se litigant cannot be an adequate class representative under Rule 23(a)(4)); *Welch v. Terhune*, 11 F. App'x 747, 747 (9th Cir. 2001) (affirming dismissal of pro se prisoner's class-action claim on the basis that a pro se litigant may not appear as an attorney for others).

### 6.  Hymas fails to state a FOIA claim.

In Count VII of his amended complaint, Hymas argues that the Department of Interior has failed to adequately respond to certain Freedom of Information Act (FOIA) requests. ECF No. 86 at 22–23. Hymas lists several requests and alleges "[t]hese requests have largely gone unanswered with regards to the relevant documents or with the response of irrelevant or incomplete responses." ECF No. 86 at 23. But because Hymas fails to identify what information was requested and what response if any was provided, he fails to state sufficient facts to support a plausible claim for relief. Further, Hymas does not allege that he has exhausted his administrative remedies under FOIA. *See In re Steele*, 799 F.2d 461, 465–66 (9th Cir. 1986) ("Exhaustion of a parties' administrative remedies is required under FOIA before that party can seek judicial review.). Accordingly, Hymas's FOIA claims are dismissed.

### B.  Hymas's Motion for a Temporary Restraining Order

Hymas moves for a temporary restraining order "barring further operation of existing unlawful so-called cooperative farming agreements and contracts (except

ORDER - 16

those lawfully entered) and barring the entering of additional unlawful cooperative agreements and contracts." ECF No. 94 at 7. Hymas argues that a TRO is necessary "because it is likely that once again the defendants will seek to delay implementation of lawfully compliant farming contracts or cooperative agreements." ECF No. 94 at 2.

A temporary restraining order is designed to preserve the status quo and prevent irreparable harm before a preliminary injunction hearing is held. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). The standard for issuing a TRO is substantially the same as the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Brown Jordan Int'l, Inc. v. Mind's Eye Interiors, Inc.*, 236 F. Supp.2d 1152, 1154 (D. Haw. 2002). As with a preliminary injunction, a plaintiff seeking a TRO "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).

Hymas's only remaining claim is the claim articulated in Count III of the amended complaint that:

> Even if the DOI as a whole and the FWS specifically has lawful authority to enter into "cooperative farming agreements" and its selection of cooperative agreements as the appropriate instrument complied with the FGCAA, the selections of "cooperators" in 2012,

2013, 2014 and 2015 was arbitrary, capricious, an abuse of discretion, and contrary to law.

ECF No. 86 at 18.

Because Hymas's remaining claim challenges past CFAs and contracts, the applicable relief Hymas requests—barring continued operations of the CFAs and contracts—would not preserve the status quo. It would do the opposite. A temporary restraining order is therefore not available as relief. *See Granny Goose Foods*, 415 U.S. at 439. Further, the government represents that FWS does not intend to award any new CFAs on the refuge complex until 2018. ECF No. 95 at 5. Any remaining issues raised in this case concerning the legality of FWS's method of awarding CFAs should be resolved before that time. Accordingly, the Court finds that Hymas has not has not shown that he is likely to suffer irreparable harm in the absence of preliminary relief. Hymas's motion for a TRO is denied.

## IV.    CONCLUSION

For the reasons discussed, each of Hymas's legal claims, except for the claim articulated in Count III of the amended complaint that FWS's award of CFAs from 2012 through 2015 was arbitrary, capricious, an abuse of discretion, and contrary to law, is dismissed, and Hymas's request for a temporary restraining order is denied.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Defendants Motion to Dismiss, **ECF No. 89**, is **GRANTED**.

2.    **Counts I, II, IV, V, VI, and VII** of Plaintiff's Amended Complaint, ECF No. 86 at 16–23, are **DISMISSED**.

3.    Plaintiff's Motion for Temporary Restraining Order, **ECF No. 94**, is **DENIED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel and pro se Plaintiff.

**DATED** this 20th day of March 2017.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER **-** 19