FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 31, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAY HYMAS, d/b/a DOSMEN FARMS,<br><br>      Plaintiff,<br><br>      v.<br><br>UNITED STATES DEPARTMENT OF INTERIOR, DEBRA A. HAALAND, Secretary of the United States Department of Interior, and AURELIA SKIPWITH, Director of the United States Fish and Wildlife Service,<br><br>      Defendants.[1] | No.   4:16-cv-05091-SMJ<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION** |

Before the Court is Magistrate Judge Dimke's February 23, 2021 Report and Recommendation, ECF No. 163, recommending that this Court grant Defendants' Renewed Motion for Summary Judgment, ECF No. 141, and deny Plaintiff's Motion for Summary Judgment, ECF No. 157. Plaintiff objected to the report in its

---

[1] Debra Haaland has succeeded David L. Bernhardt as Secretary of the United States Department of Interior. Additionally, Aurelia Skipwith no longer serves as Director of the United States Fish and Wildlife Service and the position remains vacant. Yet because the Court rules in favor of Defendants, it need not separately dismiss claims against Skipwith here.

ORDER ADOPTING REPORT AND RECOMMENDATION – 1

entirety. ECF No. 164. Defendants responded and asked the Court to adopt the Report and Recommendation. ECF No. 167.

Plaintiff is a farmer in the Columbia Basin. Defendants manage the Mid-Columbia Wildlife Refuge Complex, which includes the Umatilla and McNary National Wildlife Refuges. Defendants contract with private farmers to produce crops on certain lands within the refuges through cooperative farming agreements (CFAs), which allow the farmers to retain a share of the crop yield. After unsuccessful attempts to obtain a CFA, Plaintiff brought this suit, challenging Defendants' use of a priority system which favors incumbent farmers. The sole remaining cause of action in this case arises under the Administrative Procedure Act, (APA), 5 U.S.C. § 701 *et seq.*[2]

After reviewing the Report and Recommendation and relevant authorities, the Court finds the Magistrate Judge's findings are correct. Therefore, the Court adopts the Report and Recommendation in its entirety.

## LEGAL STANDARD

When a party files a timely objection to a Magistrate Judge's recommendation, the District Court must make a *de novo* determination about each

---

[2] Because Magistrate Judge Dimke's Report and Recommendation, as well as previous filings in the record, properly set out the procedural and factual background of this case, the Court includes only a summary here. *See, e.g.*, ECF Nos. 141, 157, & 163.

ORDER ADOPTING REPORT AND RECOMMENDATION – 2

portion of the recommendation to which the party objected. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(C). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

## DISCUSSION

Plaintiff raises five categories of objections. He argues that Magistrate Dimke erred by (1) determining the Refuge Manual was still in effect in 2013 and 2014; (2) limiting the scope of Plaintiff's claims; (3) permitting Defendants to "award CFAs without any binding guidelines whatsoever," ECF No. 164 at 7; (4) concluding the 2013 and 2014 CFA awards complied with the APA; and (5) accepting the Administrative Record. *See generally* ECF No. 164. The Court reviewed the law, the issues, and the record de novo. The Court agrees with the Magistrate's analysis and determines that only limited additional analysis is needed. This Order is to be read in conjunction with the Report. *See* ECF No. 163.

**A.   The Report properly determined the Refuge Manual was still in effect in 2013 and 2014**

Through Director's Order 42 (DO 42), Defendants sought to consolidate its "myriad of separate manuals, handbooks and other directives." AR 1374–75. A

ORDER ADOPTING REPORT AND RECOMMENDATION – 3

"savings clause," allowed Defendants to continue to rely on the directives, including the Refuge Manual, until the conversion was complete. *Id.* The second sentence of the savings clause terminated the provisions of DO 42 on January 1, 2008 in the event that the conversion of the Fish and Wildlife Service's manuals and other directives had not been completed and the revoked manuals had not been amended or superseded by that time. AR 1374–75, 1377.

Whether the Court accepts Amendment 15's retroactive effective date or not, the Refuge Manual was still in effect in 2013 and 2014. *See* AR 1378. The Refuge Manual was not converted, amended, or superseded before January 1, 2008. Either the provisions of DO 42 were "revoked" between January 1, 2008 and February 26, 2014 or the agency could rely on it under the savings clause. This is a plain reading of the text of DO 42 and does not require the Court to adopt any "unexpressed intentions to trump the ordinary import" of the regulatory language. *See Exportal Ltda. v. United States*, 902 F.2d 45, 50–51 (D.C. Cir. 1990).

**B.    The Report properly limited the scope of Plaintiff's claims**

    **1.    The Court agrees that it should dismiss Plaintiff's APA claim challenging Defendants' failure to farm Field 4**

The Court agrees that Plaintiff's operative complaint does not properly allege a "failure to act" claim under the APA and that amendment at this late stage would be overly prejudicial to Defendants. *See* ECF Nos. 86, 163; *see also Coleman v.*

ORDER ADOPTING REPORT AND RECOMMENDATION – 4

*Quaker Oats Co.*, 232 F.3d 1271, 1291–92 (9th Cir. 2000). But even if Plaintiff had properly pleaded the claim, it would fail on the merits, so amendment would be futile. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment") (internal quotation omitted).

A failure to act claim "can proceed only where a Plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original). But Section 706(1) "does not give [courts] license to 'compel agency action' whenever the agency is withholding or delaying an action [they] think it should take." *Hells Canyon Pres. Council v. U.S. Forest Servs.*, 593 F.3d 923, 932 (9th Cir. 2010). Instead, Courts may do so only when "an agency has ignored a specific legislative command." *Id.*

Plaintiff correctly asserts that Defendants adopted Alternative 2 of the Conversion Plan, which listed an "Objective" to maintain 2,100 acres for the production of crops on the two Refuges. *See* AR 335. Yet Defendants provide evidence that attempting to "maintain" crops on Field 4 would be ineffective and fruitless. *See* AR 85–86. While Defendants must "manage the refuge or planning unit in a manner consistent with the plan," its failure to meet an objective where the

ORDER ADOPTING REPORT AND RECOMMENDATION – 5

environmental conditions prevent it does not violate this mandate. *See* 16 U.S.C. § 668dd(e)(1)(E).

Defendants thus did not act arbitrarily, capriciously, or contrary to law in deciding not to farm Field 4. Nor did it ignore any *specific* legislative mandate. *See Hells Canyon Pres. Council*, 593 F.3d at 932 (rejecting Plaintiff's failure to act claim because while the applicable statute required the Forest Service to prohibit motor vehicles from wilderness areas, it did not *specifically* require the Forest Service to establish a wilderness area boundary to prohibit unauthorized vehicles). The manner of meeting the objectives of the plan is left to Defendants' discretion, and this Court cannot require them to do what they have reasonably deemed impracticable under the circumstances.

**2.    Defendants did not inject the 2017 FWS policy into this dispute**

Defendants promulgated their 2017 FWS policy *after* Plaintiff filed his operative Complaint. His claims thus could not pertain to that policy. He argues that because *Defendants* relied on the policy as a basis to dismiss Plaintiff's Amended Complaint, it is now at issue in this case. But the Ninth Circuit ultimately *rejected* Defendants' argument that the policy mooted Plaintiff's Complaint. ECF No. 139. The Ninth Circuit's mandate to address "whether or not it is permissible to favor incumbent farmers when awarding cooperative farming agreements" merely directed this Court to evaluate Plaintiff's existing claims, because Defendant had

failed to meet the "formidable burden" of showing that any "wrongful behavior could not be reasonably expected to recur." *Id.* at 2–3 (internal quotation omitted). Complying with the Ninth Circuit's directive does not require—or even allow— consideration of a policy promulgated after Plaintiff's Complaint. The Ninth Circuit did not amend Plaintiff's operative complaint *sub silentio*.

**C.    The Report does not allow Defendants to award CFAs without binding guidelines**

Neither party disputes that the CFAs were cooperative agreements. *See* ECF No. 164 at 7; ECF No. 167 at 5. Rather, Defendants argue, and the Magistrate agreed, that Plaintiff conflates assistance agreements as a general category with *financial* assistance agreements, a subset. *See* ECF No. 167 at 5. The Court agrees only financial assistance agreements are subject to rules Plaintiff cites.

Under the Federal Grant and Cooperative Agreement Act (FGCAA), 31 U.S.C. §§ 6304, 6305, the general category of assistance agreements, which includes cooperative agreements and grants, involves a transfer of any "thing of value." The CFAs in this case, all parties agree, satisfy this definition. Although 232 FW 1 and 2 C.F.R. § 25.406, cited by Plaintiff, also reference cooperative agreements and grants, the Court agrees that those provisions do not contemplate *all* grants and cooperative agreements, but financial assistance agreements in particular. "Whether a statute is unambiguous . . . is determined not only by

reference to the language itself but as well by the specific context in which the language is used, and the broader context of the statute as a whole." *Yates v. United States*, 574 U.S. 528, 537 (2015) (internal quotations and brackets omitted). "[I]dentical language may convey varying content when used in different statutes." *Id.*

For example, 2 C.F.R. § 25.406[3] provides that "financial assistance" may be "administer[ed] in the form of," among other things, grants, cooperative agreements, or "any *other* financial assistance transaction that authorizes . . . expenditure of Federal funds" (emphasis added). The use of the term "other" indicates that the previous items in the list are also "financial assistance transaction[s]." Similarly, 232 FW 1 governs training programs for agency employees involved in awards of "financial assistance." *See* ECF No. 164-1. Although none of the at-issue terms are defined in 232 FW 1, it contemplates *financial* assistance, rather than assistance generally like in the FGCAA. The CFAs do not provide financial assistance as contemplated by the rules. *See* ECF No. 163 at 36–39. The Court thus interprets the references to "cooperative agreements" and "grants" to be limited to those that provide monetary support.

---

[3] Further, as Defendants point out, 2 C.F.R. § 25.406 merely provides guidance to Defendants; it does not regulate it. *See* 2 C.F.R. § 1.105(b).

ORDER ADOPTING REPORT AND RECOMMENDATION – 8

The Magistrate correctly determined that Defendants complied with all legal requirements that *did* apply to the CFAs in this case and properly dispensed with those that did not. *See* ECF No. 163 at 36–39; *see generally* ECF No. 163. Although certain directives do not apply to CFAs, adoption of the Report would not allow Defendants to award CFAs unimpugned by standards or guidelines. Instead, the Magistrate merely parsed out which requirements apply to this dispute and which do not.

**D.    The Report properly concluded the CFA awards complied with the APA**

The Administrative Procedure Act (APA) directs district courts to "hold unlawful and set aside" an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or that is taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(A) & (D). Courts must reject "[c]onstructions that are contrary to clear Congressional intent or frustrate the policy that Congress sought to implement." *Earth Island Inst. v. Hogarth*, 494 F.3d 757, 765 (9th Cir. 2007). And agency action that is not the product of reasoned decision making is arbitrary and capricious. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). An agency must "cogently explain why it has exercised its discretion in a given manner." *Id.* at 48. Under this standard, courts "do not substitute [their] judgment for that of the

agency." *Earth Island Inst. v. U.S. Forest Serv. ("Earth Island")*, 697 F.3d 1010, 1013 (9th Cir. 2012) (internal quotations omitted).

### 1. Defendants permissibly used a priority system and had a rational basis for the 2013 and 2014 CFA awards

Many of Plaintiff's arguments rely on a determination that the Refuge Manual was not a valid source of authority in 2013 and 2014. *See* ECF No. 164 at 10–12. Because the Court determines it was a valid source of authority, it must reject those arguments. *See supra.*

While Plaintiff *may* have possessed the requisite skills and knowledge of the land for a CFA, Defendants rationally rely on past positive experiences with previous cooperators to minimize risk. The incumbent cooperators, in order to remain eligible for priority status, fulfilled the obligations of their previous agreements. *See* AR 150. They have thus proven to Defendants their knowledge and skills, alleviating the need for the agency to "request information from its existing cooperators." ECF No. 164 at 11.

And Plaintiff has cited no authority which *required* Defendants to seek cooperators willing to farm the land on McNary Refuge, which had been left fallow because the acres were "economically undesirable for existing cooperators." *See* AR 51. The Refuge Manual instructs that "no person should be selected who is not willing . . . to meet the requirements" of a cooperation agreement. AR 149. But that

says nothing about the inverse; it does not require Defendants to award a CFA, regardless of the conditions of the land, prior experience, and other considerations, so long as there is *anyone* who is willing to farm it. As discussed above, Defendants rationally determined not to contract with anyone to farm Field 4 due to economic and environmental concerns. The Court will "not substitute [its] judgment for that of the agency." *Earth Island*, 697 F.3d at 1013 (internal quotations omitted).

### 2. The award of Library Field to Mr. Blasdel was, at worst, harmless error

The Report properly determined that even if Defendants violated the Refuge Manual in its award of Library Field to Mr. Blasdel, it was harmless error. Mr. Blasdel had priority status because he used land in the local vicinity, whereas Plaintiff "did not provide any location information to verify" the location where he claimed to be farming, despite being asked for the address of the property. *Compare* AR 150 *with* AR 213 (Plaintiff provided a residential address approximately seven miles from the McNary Refuge and twenty-three miles from the Umatilla Refuge, but he did not provide a farming address). Defendants' determination that seven miles as the crow flies is not "in the vicinity" is rational and is not contrary to law. *See* AR 123–78 (providing no definition of "in the vicinity" or "neighbor"). Plaintiff does not refute this contention. *See* ECF No. 162 at 5–6; ECF No. 164 at 12.

//

E.  **The Report properly accepted the Administrative Record**

   1.  **The memoranda prepared in this case do not present *post hoc* rationalizations**

"An agency must defend its actions based on the reasons it gave when it acted." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1909–10 (2020). Acknowledging that elaborations "must be viewed critically" to avoid impermissible *post hoc* rationalizations, the Court agrees with the Report that the memoranda are "fuller explanation[s] of the agency's reasoning at the time of the agency action" and are therefore properly considered by the Court. *See id.* at 1907, 1908.

As the Report explains, the Glass and Stenvall memoranda, AR 85–88, 89–92, 190–93 & 212, "contain the rationales of . . . decision-makers with authority to speak on its contents. They are not incongruent with the April 2013 letter advising Mr. Hymas he was not awarded a CFA." AR 93.

Defendants do not "supplant" their original rationale "with a different one." *See* ECF No. 162 at 10. Even viewing the memoranda critically as required, the Court agrees that they merely "offer genuine justifications for important decisions" so that those reasons "can be scrutinized by the courts and the interested public." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2575–76.

//

## 2. Plaintiff has not overcome the presumption of regularity

Plaintiff argues that "the issues at play in this case make it extremely unlikely that the record here is complete." ECF No. 164 at 14. He contends that Defendants admitted that they had not followed the agency's manuals in the past. *Id.* (citing Corrected Br. for Def.-Appellant United States, Fed. Cir. Case No. 14-5150, ECF No. 24 at 17). He is not requesting "every scrap of paper" relating to the case, he insists, but does not provide an indication of what he believes is missing. *Id.* (quoting ECF No. 163 at 29–30).

The Court agrees with the Magistrate. Defendants have certified under penalty of perjury—even if they did not do so initially—that the Administrative Record is complete. *See* ECF No. 112-1; ECF No. 160-1. Even if Defendants have failed to follow agency manuals on other issues in the past, Plaintiff has not made any persuasive showing that the *administrative record* is incomplete.

## F. Plaintiff has waived injunctive relief

Notwithstanding all the shortcomings in Plaintiff's position detailed in the Report and above, this Court agrees with the Report that Plaintiff is not entitled to a permanent injunction. First, he failed to argue for injunctive relief in his motion for summary judgment. ECF No. 157; *see also* ECF No. 163 at 26. Plaintiff did not label his motion as a "partial" motion for summary judgment, and he asked for other relief in the motion. ECF No. 157 at 22; *see also Friends of Yosemite Valley v.*

ORDER ADOPTING REPORT AND RECOMMENDATION – 13

*Kempthorne*, 520 F.3d 1024, 1033 (9th Cir. 2008) ("Arguments not raised by a party in its opening brief are deemed waived."). Second, this Court likely does not have jurisdiction to award permanent injunctive relief in this matter. *See Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 646–47 (9th Cir. 1998); *North Side Lumber Co. v. Block*, 753 F.2d 1482, 1485 (9th Cir. 1985).

Accordingly, **IT IS HEREBY ORDERED**:

1. The Report and Recommendation, **ECF No. 163**, is **ADOPTED** in its entirety.

2. Defendants' Renewed Motion for Summary Judgment, **ECF No. 141**, is **GRANTED**.

3. Plaintiff's Motion for Summary Judgment, **ECF No. 157**, is **DENIED**.

4. All remaining claims are **DISMISSED WITH PREJUDICE**, with all parties to bear their own costs and attorney fees.

//
//
//
//
//
//
//

ORDER ADOPTING REPORT AND RECOMMENDATION – 14

5.  This Court **SUBSTITUTES** Debra A. Haaland for David L. Bernhardt as a Defendant in this matter under Fed. R. Civ. P. 25(d). The Clerk's Office is directed to **AMEND** the caption accordingly.

6.  The Clerk's Office is directed to **ENTER JUDGMENT** in favor of Defendants and **CLOSE** the file.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel and Magistrate Judge Dimke.

**DATED** this 31st day of March 2021.

_____
SALVADOR MENDOZA, JR.
United States District Judge